FILED
2021 NOV 4 PM 12:03
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LARRY E. HAFEN,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br>Case #4:20-cv-00117-PK<br><br>Magistrate Judge Paul Kohler |

Before the Court is Plaintiff Larry E. Hafen's appeal of the Social Security Administration denying his application for disability and disability insurance benefits and supplemental security income. The Court held oral arguments on October 27, 2021. After consideration, the Court will reverse the decision and remand the case.

I. BACKGROUND

A. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits on December 15, 2017, and an application for supplemental security income on January 11, 2018. In both applications, Plaintiff alleged disability beginning June 1, 2017. The claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on January 21, 2020. The ALJ denied the applications on March

---

[1] Pursuant to Fed. R. Civ. P. 25(d) and the last sentence of 42 U.S.C. § 405(g), Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

1

11, 2020. The decision became the Commissioner's final decision when the Appeals Council denied review on September 5, 2020.

B.     MEDICAL HISTORY

Plaintiff has a history of depression, anxiety, bipolar disorder, obesity, and hypertension. He has been hospitalized several times for alcohol intoxication and depression with suicidal tendencies. He appears to have stopped drinking around 2018 but continued to suffer significant symptoms of mental health disorders and receive treatment. In January 2020 he reported he had been having knee pain for about a year; he was evaluated and found to have arthritis of the knees.

C.     HEARING TESTIMONY

At the hearing in January 2021, Plaintiff testified that he cared for his parents and his mentally ill sister by driving and shopping, assisting his father with walking, and helping with meal preparation. He stated that he helped with general housework but that it was difficult for him to stay on task while doing so. He reported sweeping, doing the dishes, doing laundry, and mowing the small lawn. However, he indicated that he would go many days without doing chores due to his depression and anxiety. His hobbies included reading, painting, and drawing. He stated he could sit for short periods of time only, stand for ten to fifteen minutes without support, and walk halfway around the block. He stated that he had knee problems requiring him to rest and apply cream periodically.

Plaintiff reported that he was a licensed social worker with a master's degree. He stopped working around 2017 after being let go from the adolescent care center where he worked due to his "extreme, sudden outbursts," agitation, and absenteeism due to feeling he could not handle

work. Plaintiff described two prior jobs he had left due to problems focusing as well as depression, anxiety, and anger.

Plaintiff testified that he had been diagnosed with bipolar disorder and anxiety disorder. He stated that he experienced "rapid cycling," meaning that he was depressed severely for days or up to a week and then became hyperactive, anxious, unable to concentrate, overtalkative and going off subject, "just going and going, mostly in my mind." He indicated that he was sometimes unable to concentrate on reading or understand what he was reading and expressed frustration at not being able to finish his thoughts in conversation. He added that he was agoraphobic and that he experienced anger and a "short fuse." Plaintiff testified that he experienced side effects of medications including weight gain and problems with short-term memory.

The ALJ presented the vocational expert ("VE") with a hypothetical individual with Plaintiff's vocational and educational background but limited to medium exertional work; simple, unskilled tasks with an SVP of one or two; tasks must be learned in thirty days or less or through a brief demonstration; the assigned work must be with objects, not people; no more than occasional contact with coworkers and supervisors; no contact with the public; and not performed as a member of a team or crew. The VE testified that such an individual could not perform Plaintiff's past work. However, the VE identified three jobs—Housekeeper, laundry aid (200,000 jobs); Industrial cleaner (300,000 jobs); and Cleaner II (214,000 jobs)—that such an individual could perform. In response to a hypothetical from Plaintiff's attorney, the VE testified that there would be no work for such an individual who was off task 20% or more of the workday or absent from work four days or more per month. The VE clarified that off-task

behavior 15% or more of the workday and being absent, late or leaving early one or more times per month is generally work-preclusive.

D.    THE ALJ'S DECISION

At step one of the five-step sequential evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of July 1, 2017. At step two, the ALJ found that Plaintiff had the severe impairments of depression, bipolar disorder, and anxiety and the non-severe impairments of morbid obesity, bilateral knee problems, hypertension, obstructive sleep apnea, and substance abuse disorder. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c) except limited to simple, unskilled tasks with an SVP of 1 or 2; the assigned tasks must be learned in thirty days or less or through a brief demonstration; the assigned work must be with objects and not people; the assigned tasks must require no more than occasional contact with coworkers and supervisors and no contact with the public; and the assigned work must not be performed as a member of a team or crew. At step four, the ALJ determined that Plaintiff could not perform any past relevant work. At step five, the ALJ found that there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform and that, therefore, he was not disabled.

II.  STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were

applied.  "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.  The Court should evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.  However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.

### III. DISCUSSION

Plaintiff argues that the ALJ erred in (1) evaluating the medical opinion of his treating psychiatrist, (2) handling his request for the ALJ to recuse herself due to general bias, and (3) finding that Plaintiff had no severe physical impairments and could perform medium work.

A.     MEDICAL OPINION EVIDENCE

Plaintiff argues that the ALJ's finding that the medical opinion of his treating psychiatrist, Dr. Wayne Moss, was not persuasive is not supported by substantial evidence.  The Court agrees.

For applications filed on or after March 27, 2017, an ALJ is not required to defer to or give any specific weight to medical opinions or prior administrative medical findings.  Rather, the ALJ considers them using the criteria in 20 C.F.R. § 404.1520c(c):  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. The most important criteria for determining persuasiveness are the supportability and consistency.  "For supportability, the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase."  "Consistency, on

5

the other hand, is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record."

The ALJ must articulate "how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record."  The ALJ must explain how he or she considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings, but is generally not required to explain how he or she considered other factors.  Social Security Ruling 96-8p emphasizes that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."

　　　　1.　　Dr. Wayne Moss

Plaintiff's treating psychiatrist, Dr. Wayne Moss, submitted a medical opinion dated June 25, 2019.  Dr. Moss diagnosed bipolar disorder, major depressive disorder, and generalized anxiety disorder. He confirmed depressed mood, anhedonia, sleep disturbance, decreased energy, feelings of guilt and worthlessness, difficulty concentrating or thinking, suicidal thoughts, pressured speech, flight of ideas, distractibility, and psychomotor agitation. He explained that Plaintiff experienced "significantly limiting" side effects from his medications including sleepiness. Dr. Moss assessed moderate or marked limitations in all work-related areas of mental functioning. He also opined that Plaintiff's symptoms were severe enough to interfere with the attention and concentration to perform simple, routine tasks 20% or more of the workday; Plaintiff would be off-task 20% or more of an eight-hour workday; Plaintiff would likely be

absent from work four days or more per month as a result of his impairments and/or need for medical treatment; and Plaintiff could be expected to perform less than 50% as efficiently as an average worker.

> The ALJ found Dr. Moss's opinion unpersuasive, explaining as follows:
>
> I find the opinion of the treating psychiatrist not persuasive. Wayne Moss, MD, completed a Treating Source Statement essentially indicating the claimant has marked limitations in all areas of mental functioning, including memory and concentration. However, the doctor's own treatment notes do not support this opinion. Mental status examination during treatment revealed claimant with normal memory, attention and concentration. Even during periods of instability, there were no significant changes in cognitive functioning. Therefore, I find the opinion of the treating psychiatrist not persuasive.

Plaintiff contends that the ALJ cherry-picked notes favorable to her finding by relying only on normal mental status examinations. However, it is clear from the opinion as a whole that the ALJ considered the entire record. Elsewhere in the decision, the ALJ noted Dr. Moss's treatment notes documenting complaints of rapid cycling, abnormal mental status examinations, suicidal thoughts, and periods of increased symptoms and instability.  The ALJ explained her reasons for discounting each of these.

Plaintiff also argues that the ALJ failed to account for the waxing and waning of his symptoms over time. However, the ALJ acknowledged these fluctuations. She explained that "there is evidence of periods of increased symptoms and instability," but that "there was no significant change in the mental status findings" during those times.  She further stated that "[e]ven during periods of instability, there were no significant changes in cognitive functioning." The court will not re-weigh the evidence.

7

Nevertheless, the ALJ did err in failing to articulate her reasons for rejecting the more restrictive limitations in Dr. Moss's opinion. For example, the ALJ did not even mention, let alone explain why she found unpersuasive, Dr. Moss's assessment of marked limitations in sustaining an ordinary routine and regular attendance at work or expected absenteeism of four or more days per month. The ALJ's failure to explain why she did not adopt a limitation for absenteeism consistent with this opinion is contrary to the regulations. Furthermore, the Court is unwilling to label the error harmless. There is evidence in the record to support such a limitation, including treatment notes indicating that Plaintiff had frequent medical appointments and at least two hospitalizations during the relevant time period and stating that Plaintiff's anxiety was sometimes so debilitating that "he can't do anything." Plaintiff testified that absenteeism caused by mental health issues had interfered with prior employment. Even the state agency reviewing physicians, whom the ALJ found persuasive, opined that Plaintiff's mood disorder "limit[ed] his ability to persist over the course of a normal workweek." The VE testified that an absenteeism rate of even once per month on an ongoing basis would be work-preclusive. The Court will remand the case so the ALJ can fully consider and articulate the reasons for her treatment of the more restrictive limitations in Dr. Moss's opinion. Because the Court is remanding the case based upon this issue, it need not make rulings on the other issues.

## IV.  CONCLUSION

Accordingly, the case is REVERSED and REMANDED to the Commissioner for further proceedings consistent with this Memorandum Decision and Order.

DATED:  04 November 2021.

BY THE COURT:

_____
PAUL KOHLER
United States Magistrate Judge
